ROSLYN HEAD LYONS, *Pro Se* Plaintiff
6132 Buena Venture Avenue
Oakland, CA 94605
(510) 915-4293 (P)
klons1@aol.com

**FILED**

NOV 16 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**HSG**

CV 20      8088

| | |
|---|---|
| ROSLYN HEAD LYONS,<br><br>        Plaintiff,<br><br>vs.<br><br>ALAMEDA HEALTH SYSTEM,<br><br>        Defendant | Case No.: _____<br><br><br>EMPLOYMENT DISCRIMINATION<br>COMPLAINT |

1.  Plaintiff resides at:

    6132 Buena Venture Avenue

    Oakland, California 95605

    (510) 915-4293

2.  Defendant is located at:

    1411 East 31st Street

    Oakland, California 94602

3.  This action is brought for aged based discrimination, sex-based harassment, sex

discrimination, failure to take reasonable steps to prevent discrimination and harassment, and

retaliation in violation of Title VII of the Civil Rights Act of 1964 and Age Discrimination in

-1-

Employment Act for employment discrimination. Jurisdiction is conferred on this Court by 42

U.S.C. Section 2000e-5. Equitable and other relief is sought under 42 U.S.C. Section 2000e-5(g).

4.   The acts complained of in this suit concern me being subjected to unwelcome conduct of

a sexual nature at least twice a week by Defendant's employee, Nesbit Crutchfield. Crutchfield

made numerous demands of me to ride in his car as well as requests to go to the casino

and to have lunch with him. He also made personal inquiries such as, "can you cook?" and "was

your husband your first?" Additionally, Crutchfield made comments such as, "you are attractive

and intelligent," "I like your lips," and "that is my favorite dress." I persistently requested

Crutchfield to treat me respectfully, which culminated with him touching me inappropriately at a

work gathering and whispering "I'm in love with you."

5.   The acts complained of in this suit concern my age and are in retaliation for opposing

discrimination when I was not selected for the Medical Social Worker I/II, although I was more

qualified than the selectee, in or around February/March 2018.

6.   Defendant's conduct is discriminatory with respect to my age, sex and in retaliation for

my engagement in protected activity under Title VII opposing discrimination, as I complained

about Crutchfield sexually harassing conduct beginning on or around December 30, 2016. I

requested a transfer, but Defendant did nothing to stop it or correct the situation, so it continued.

## BASIC FACTS

7.   I am a woman and my date of birth is April 1, 1956. I was hired by Defendant on July

25, 1986, as Medical Social Worker I. My most recent position is Admissions Coordinator.

8.   During the time of the alleged discriminatory period, and to present, my immediate

supervisor is Michael McAdoo. I am employed in the Admissions Department of one of

Defendant's adult outpatient psychiatric programs in Highland Campus.

9.  Nesbit Crutchfield, former Rehabilitation Counselor, worked for the Behavioral Health Services Department in the same outpatient program where I work. Although we worked at different departments, the nature of our positions and duties required frequent interaction. For example, both of us participated in the same monthly staff meetings, daily, Reconciliation of Daily Activities, (RODA), meetings, and daily community meetings.

10. From early 2015 to July 2016, I was persistently subjected to Crutchfield's unwelcome conduct of sexual nature at least twice a week through July 8, 2016. He made numerous directed and unwelcome offers to ride me to my car as well as requests to go to the casino and invitations to visit him following his move to Florida which I always declined.

11. Crutchfield also made directed and unwelcome personal inquiries such as "can you cook?" and "was your husband your first [sexual encounter]?"  Additionally, he made directed and unwelcome comments such as, "you are attractive and intelligent," "I like your lips" and "that is my favorite dress."

12. I persistently requested Crutchfield to treat me respectfully, and repeatedly questioned him as to whether he "would like that a male coworker talk to [his] wife or daughter the way [he] talk[ed] to me?" His response was "but I want to be your friend." When I declined his request as friend his response was "but I want to be your friend" in the midst of throwing a child-like tantrum of physical shaking of his body and pleading in an elevated voice.

13. After I complained to Crutchfield about his harassing conduct and to treat me like other women in the department, he seemed emboldened to further continue his sexual harassing conduct through to July 8, 2016, (the date of the groping incident.).  Each time in response to my repeated reprimands, his response would be, "I know, I know" or "I am sorry."

14. On July 8, 2016, I arrived late to a work-related social gathering at Luka's Taproom & Lounge. I only sat next to Crutchfield since no other chair was available at the time of my arrival. Later on at the gathering, Crutchfield persistently groped and squeezed my upper right thigh while his fingers pointed toward my crotch area in three consecutive instances. I immediately removed his hand from my thigh each and every time in opposition to his sexually harassing conduct. During the first instance when he inappropriately and sexually assaulted me, he whispered to my ear, "I'm in love with you."

15. On July 16, 2016, in a Facebook post, Crutchfield admitted (1)  that I had asked to be treated like Denise Drummer-Taylor and Carnetta Porter (two other Black female staff members in the department), (2) that I repeatedly requested he address me as he would want a male peer to address his wife or daughter, (3) that I had always rebuffed his unwelcomed, unsolicited sexual harassing comments, and (4) that Denise Drummer-Taylor reported that he had groped another female co-worker at her going way event (also held off campus at a restaurant). His written response was "Roslyn, everything you have said is true. I accept all blame and fault for this negative experience I subjected you too (sic)." … "I admit I touched you I was wrong. I take ownership. I apologize I will not do it again.  I want to be your friend."

16. On July 22, 2016, in a meeting with Ms. Carnetta Porter, myself and Crutchfield, Crutchfield admitted he did in fact engage in the conduct and statements I identified. He unexpectedly admitted during this meeting that he saw himself as having an affair with me, despite acknowledging my persistent rebuffs to his inappropriate sexual advances. He also admitted to having sexual harassed other women in the past.

17. On October 23, 2016, in a meeting with my husband, Kenneth Lyons, myself and Crutchfield again did not dispute that he did in fact engage in ten out of the eleven inappropriate sexual conduct and statements I identified, and the groping incident on July 8, 2016.

18. On or around December 28, 2016, Crutchfield made a threat "I am going to blast you!" in response to notice I plan to report him to management, state licensing board and Oakland Police Department.

19. Informally, before December 30, 2016, (a) I addressed each time Crutchfield made an inappropriate sexual harassment comment, (b) I maintained my distance from Crutchfield after the groping incident, communicating about work matters primarily by email, (c) I disclosed Crutchfield's groping of me to a few close friends/co-workers, (d) on May 10, 2016, I addressed with Crutchfield via Facebook his sexual harassment since 2015 and his groping of me on July 8, 2016,  despite repeatedly being told to stop, (e) I addressed an earlier report by Denise Drummer-Taylor he had groped a former female  co-worker during a celebratory off campus event for the former co-worker, (f) I requested Crutchfield meet with Carnetta Porter, Psychologist/rehabilitation Counselor, which was held between Porter, myself and Crutchfield was held on July 22,2016; and (g) I requested Crutchfield meet with my husband, and myself. The meeting was held on October 23, 2016.

20. I formally complained about Crutchfield's harassing conduct to Mr. Michael McAdoo, Program Manager, and Ms. Desiree Moseley, Labor Representative, on December 30, 2016 and January 19, 2017, respectively. Mc Adoo's immediate reaction after I asserted my complaint involved berating, dismissiveness, bias and was immediately retaliatory.  Moseley reaction after I asserted my complaint involved yelling in harsh loud tones, intimidation, bias treatment, purposeful deception and misrepresentation to me.

21. Moseley abused her position as Labor Representative and displayed bias and disparate treatment in deference to treatment shown Crutchfield. Moseley attacked me complaining about discrimination/harassment by Crutchfield, which was twisted as though I was making "threats" towards Crutchfield. In reference to Crutchfield's verbal threat "I'm going to blast you!", Moseley response was "oh he said he didn't mean anything."

22. Defendant refused to take any actions to address Crutchfield's abusive behavior. Defendant instead, began a pattern of targeting and distorting the minor of actions on my part in deference to Crutchfield.

23. In response to my reporting Crutchfield to our Program Manager, Michael Mc Adoo and Desiree Moseley on December 30, 2016 and January 19, 2017 respectively he seemed emboldened to initiate and continue a pattern of retaliatory and intimidating behavior from January 19, 2017 through on or around August 30, 2018, the date of his employment ceased at the Medical Center. His intimidating behavior involved his purposefully walking close to me when I was in the hall, turning his head towards me when we in the same physical space, and/or glaring directly at me in a threatening way.

24. At my request, a December 30, 2016 meeting with Mc Adoo, my husband, Kenneth Lyons and myself was held. Prior to our meeting I informed Mc Adoo by phone of my intent to bring my husband for support. I was not informed at any time by Mc Adoo that my husband could not be part of meeting at the Medical Center.  At the meeting I presented details of Crutchfield's sexual harassment beginning in 2015 and culminating with his groping me on July 8, 2016.  My husband expressed concern specific to Crutchfield's threat to "blast me." He asked that Crutchfield's threat be addressed.

25. On February 5, 2017, I contacted the Oakland Police Department and made an official report of sexual harassment by Crutchfield to Oakland Police Officer, Rita Garcia. On or around late February early March 2017, I was interviewed by Oakland Police Investigating Officer, Mariza Rivera. On or around mid or late March 2017, I received a response from Alameda County District Attorney, Schowneck and/or a staff member in her office that Crutchfield's groping of my thigh did not meet the charge of sexual battery. I was told sexual battery in California is specific to sexual organs, breast, anus and groin.

26. On or around the mid or later part of January 2017, my search of the California Board of Behavioral Sciences showed Crutchfield had abandoned his Marriage and Family Therapist Intern license. I therefore, did not pursue making a report to the licensing board.

27. On or about January 4, 2017, immediately upon my return to work from the holiday break, McAdoo insisted I meet with him and my sexual harasser, Crutchfield, in-person. While I was only willing to meet in-person, with an additional observer(s), with Crutchfield for any work concerns, I had no desire to meet regarding my complaint with Crutchfield to avoid the trauma of being in immediate physical contact with Crutchfield. McAdoo's response was "this has nothing to do with trauma." He remained persistent in his demand that I meet in-person with Crutchfield.

28. On January 4, 2017, immediate before my discussion with Mc Adoo I met with HR Rep Charmayne Pierce. I reported to Pierce, Mc Adoo's demand to have in-person meeting with Crutchfield and myself . Pierce said she didn't know anything but would look into the matter.

29. On January 6, 2017, McAdoo berated me in the hallway outside of his office in an intimidating and accusatory voice with pointed finger in upward/downward motion twice asking "did you not take the sexual harassment training?" I reported Mc Adoo's behavior to my Union

Rep, Jennifer Bills. Bills in follow up stated she would forward my complaint to Desiree Moseley.

30. On January 9, 2017, as result of my contact with Human Resources Manager, Charmayne Pierce about Mc Adoo's direction, McAdoo respond that he would honor my request not to have an in-person meeting with Crutchfield.

31. On January 13, 2017, McAdoo dismissed the validity of my sexual harassment complaints, and dismissively alleged that I was making "threats" against Crutchfield for filing such, and that Crutchfield obviously didn't mean anything when he said.

32. Moseley reported to Defendant that Crutchfield had admitted to the conduct. However, her reaction after I asserted my complaint involved yelling in harsh loud tones, intimidation, bias treatment, purposeful deception and misrepresentation to me.

33. In the January 19, 2017, meeting, my union representative, Bills, attended at my request. Moseley reported to Defendant that Crutchfield had admitted to the conduct. Moseley reported that while my bringing my husband to the medical center could been seen as a "threat" that Mc Adoo denied my husband was threatening and or that he felt threatened. Moseley made statement that given Mc Adoo's reported my husband was not a "threat" she would leave that out of her report.

34. On February 7, 2017, Mc Adoo refused to talk to me when I went to his office door to ask why I was being harassed and targeted. Immediate to his opening his door and stating my question he drew his hands across his neck to verbally communicate "cut it," implying he didn't want to hear anything I had to say.

35. On February 8, 2017, I received an email from Mc Adoo stating he was addressing a complaint by Crutchfield that I was causing a hostile work environment by sitting near a

partition during our RODA meetings. A day earlier Mc Adoo had come to my office asking did I make a comment that Denise Drummer-Taylor didn't have any PTO time. He stated he was told by Moseley to follow up on a report I was "stalking" Crutchfield.  I responded to Mc Adoo that Denise Drummer-Taylor informed me she had little PTO. I also informed Mc Adoo that I reported Crutchfield's address in my filing with OPD on February 5, 2017.

36. On February 8, 2017, I met with Moseley at my request to report incidents of targeting behavior and bias treatment by McAdoo in deference to Crutchfield.   Among the incidents, I reported the email sent by Mc Adoo stating I was creating a hostile work environment per Crutchfield's reporting I was sitting near a partition during our department's RODA meeting. Moseley suggested I send Mc Adoo an email asking how my discretely sitting out of Crutchfield's view impacted his ability to do his job.

37. On February 8, 2017 at Moseley suggestion, I submitted an email to Mc Adoo on how where I sit impacts Crutchfield's ability to do his job. Mc Adoo failed to respond to either of the two emails I sent with inquiry how where I sit impacts Crutchfield's ability to do his job.

38. On February 23, 2017, at my request I met with Moseley to address Crutchfield's intimidating behavior of purposefully walking close when passing in hallway. Moseley response reflected a biased opinion regarding my reporting of Crutchfield intimidating behavior and of my reporting of Crutchfield's sexual harassment. She communicated in loud, harsh and intimidating tone and made bias comments such as: "I didn't tell you to email him, (Mc Adoo) twice, that's harassment!", "You brought a threat to the medical center!", "Your made threats!" and "Nothing on Facebook can be counted as evidence!"  Moseley also made statement "he didn't mean it" in reference to Crutchfield's threat "I'm gone to blast you!".

-9-

39. At the February 23, 2017, meeting with Moseley I began to breakdown in tears as my complaints against Mc Adoo and Crutchfield were falling on deaf ears and I continued to subjected to discrimination and harassment now by the very managers and employees who were supposed to prevent such. In response to my tears Moseley yelled "I'm not a therapist!"

40. At the February 23, 2017, meeting Moseley also accused me of lying that the Defendant knew or should have known of Crutchfield's discrimination/sexual harassing conduct when I reported Carnetta Porter, former, staff Psychologist/Rehabilitation Counselor had reported during the July 22, 2016 meeting with she, myself and Crutchfield that Crutchfield admitted he made inappropriate advance towards Porter when she began working in the department.

41. During February 23, 2017 meeting, I met with Moseley and addressed with her my knowledge of staff having been afforded transfers to different departments, outside of having filed complaints about discrimination/harassment. Moseley agreed to speak with Charmayne Pierce, Human Resources Personnel Manager, which I was under the impressions would have been done and I would have been contacted about the response.

42. On March 6, 2017, I complained to Moseley about Crutchfield's intimidating conduct at Moseley's suggestion I requested a transfer since I no longer felt safe in the workplace. Defendant, again refused to take any actions to address Crutchfield's abusive behavior.

43. Mc Adoo had some knowledge of Crutchfield's sexual harassment behavior. A few months prior to my reporting of Crutchfield's sexual harassment to Mc Adoo, Mc Adoo approached me in the copy room and commented "if there is any sexual harassment I need to know about it." During the December 30, 2016 meeting with Mc Adoo, my husband and myself, I asked Mc Adoo about his earlier statement  "if there is any sexual harassment I need to know about it." I asked "How did you know Michael?" Mc Adoo's response was "I think you told

me." I responded "no." "Mc Adoo then responded "oh I think maybe because I saw him in your office."

44. On or around March 2017, Crutchfield blew up at me when he requested I intervene on a case of closed patient, in retaliation for reporting and complaining of his behavior. The patient had called Crutchfield to return material that belonged to him, and when I attempted to understand why he was unable to resolve the matter he blew up at me. In an angry, loud voice he stated "I don't have time for this, I just got back from vacation!" His disruptive/unprofessional behavior emotionally jarred me for a few minutes and disrupted my focus to address the task I was working on. I reported this incident to Mc Adoo, but did not receive any acknowledgment or response.

45. On March 30, 2017, I encountered Moseley outside the E-1 area. She stated that with her department head leaving she hadn't had a chance to follow-up with Pierce, but that she would get back me.

46. On April 7, 2017, I met with Moseley and she stated she had been in contact with Pierce who was in the process of searching for a transfer position.

47. On April 10, 2017, I received an email from Pierce stating that her department does not does not transfer people to other positions for circumstances such as mine, *i.e.*, for people who have filed sexual harassment complaints. Based on Pierce's email it was apparent that Moseley, through the Defendant, had no intention of ensuring a work environment free of discrimination, harassment and retaliation. Her actions were purposefully deceptive.

48. In or around June 2017, I applied for the Medical Social Worker I/II position with Defendant.

49. On July 3, 2017, I was contacted to interview for the Medical Social Worker I/II position on July 7, 2017. I was told my interview was being held at in the E-Wing at the Medical Social Services office. On the day of the interview, the Defendant deliberately moved the location of the interview and purposefully failed to notify me of the location change in retaliation for my complaint of sexual harassment. I learned the meeting location was changed by contacting a Social Work staff colleague and obtaining Kio Pak's cell number. The interviewers were (a) Peter Underwood, Director Care Management, (b) Helen Pagilagan, Burse Education Supervisor, and (c) Kio Pak, Sexual Assault/Domestic Violence Coordinator. I never received notice that I was not accepted for the Medical Social Worker I/II position.

50. On or around July/August 2018, I learned two other individuals (Selectee 1 and Selectee 2) were selected for the vacancies, who were demonstratively younger than I in age and, to my knowledge, had not complained of discrimination to Defendant before.

51. Selectee 1 was not known to have any medical social work inpatient hospital experience. Selectee 2 also was not known to have medical social work inpatient hospital experience.

52. At the time, I had over sixteen (16) years of medical social work experience with Defendant. My medical social work experience included the Emergency Department, Trauma, Sexual Assault, Intensive Care Unit, and Medical/Surgical and Acute Rehabilitation. Due to my superior skill level as a Medical Social Worker 2 months prior to the July 2017 interview; I was asked by my program manager to assist a Defendant senior inpatient medical social worker with a difficult patient discharge case. The patient had refused to leave the hospital though having been medically cleared for several months. As result of my intervention in ascertaining the patient had an additional insurance that had lapsed, the patient was discharged to skilled nursing/rehabilitation facility within a week. I also have 16 years of outpatient psychiatric

experience as Admissions Coordinator with Defendant. Acute facilities nationally have had increase in complex care case involving acute medical and psychiatric. I contend I was denied selection base on my age and in retaliation to filing my equal employment opportunity charge against Defendant with the U.S. Equal Employment Opportunity Commission.

53. During the first week of July 2018, Crutchfield blew up at me again while I was on the phone. He paced in an agitated manner returning to the office doorway several times causing a distraction in my providing service to the caller. Subsequent to completion of my call he spoke in an agitated manner accusing me deliberately of ignoring him.  Having no response to my earlier report in 2017, I did not report the July 2018 incident because I felt Defendant would not do anything to stop it and/or retaliate against me for reporting such.

54. I believe Defendant failed to take all reasonable and necessary steps to prevent sexual harassment from occurring and to eliminate sexual harassment from the workplace, including but not limited to (a) failing to have an effective policy regarding workplace harassment, (b) failing to have an effective procedure for addressing or investigating complaints of harassment, (c) failing to effectively implement any procedure it may have had for investigating complaints of harassment, (d) failing to adequately investigate my complaints, despite my numerous complaints to human resources and Defendant, and (e) failing to appropriately train its employees.   Defendant knew or should have known about the unwelcome and harassing conduct towards me and were remiss in failing to take immediate and appropriate corrective action.

55. I believe Defendant maintained and required me to work in an environment which was, and continues to be discriminatory towards me, as a female. Similarly situated male employees were not subjected to the same treatment. I was subjected to disparate treatment by Defendant in the terms and conditions of my employment, including when I was subjected to sexual

harassment and sex discrimination, and when Defendant failed to respond effectively to my complaint of harassment, discrimination and retaliation.

56. I believe Defendant retaliated against me when it (a) failed to adequately investigate my repeated complaints of sexual harassment and sex discrimination, (b) failed to take appropriate and sufficient corrective action to stop the harassment and discrimination in employment or prevent any similar misconduct from occurring the future, (c) failed to keep me informed about the progress of the "investigation" of my complaint, if such investigation(s) took place, (d) solicited negative feedback regarding my job performance after I made complaints of sexual harassment, discrimination, and (e) failed to select me for the position of Medical Social Worker I/II, to which I substantially superior to the selectee, and (f) attempted to push me out the department through the retaliatory acts of harassment, deception and bias in deference to Crutchfield. The above enumerated acts of retaliation are not meant to be exhaustive, but merely exemplary of the kinds of acts of retaliation against me.

57. The alleged discrimination occurred on or about mid to late 2015 through to August 2018. The aforementioned harassment was and remained sufficiently severe and/or pervasive to alter my conditions of employment and created a hostile work environment. The unwelcome sexual harassment by Defendant created an oppressive, hostile, intimidating and/or offensive work environment of me and interfered with my emotional well-being and ability to perform my job duties.

58. As a direct, foreseeable, and proximate results of Defendant's actions, I have suffered and continue to suffer humiliation, embarrassment, mental and emotional distress and discomfort. I have incurred, and will continue to incur medical expenses, loss of benefits and wages,

-14-

opportunities for employment and advancement, loss of professional reputation and work experience.

59. I filed charges with the Federal Equal Employment Opportunity Commission regarding defendant's alleged discrimination conduct on May 1, 2017.

60. The Equal Employment Opportunity Commission issued a Notice-of-Right-Sue letter (copy attached), which was received by me on or about August 18, 2020, finding reasonable cause to believe that violations of the statue(s) occurred with respect to some or all matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief. All administrative prerequisites have been met.

61. Plaintiff hereby demands a trial by jury in this action of all claims for which a jury is permitted.

62. WHEREFORE, Plaintiff prays that the Court grant such relief as may be appropriate, to the extent allowed by the law, including injunctive orders, economic damages, non-economic damages for pain, suffering and emotional distress, exemplary damages, costs, and attorney fees. I also seek such other relief as the Court deems just.


DATED: November 16, 2020

_____
ROSYLN HEAD-LYONS
Plaintiff, *Pro Se*

-15-

EEOC Form 161-A (11-16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE
### *(CONCILIATION FAILURE)*

To:   **Roslyn E. Head-Lyons**
      **6132 Buena Ventura Avenue**
      **Oakland, CA 94605**

From:   **Oakland Local Office**
        **1301 Clay Street**
        **Ste. 680-North**
        **Oakland, CA 94612**

☐   *On behalf of person(s) aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **846-2017-21246** | **Steven T. Hunt,**<br>**Investigator** | **(510) 956-0012** |

**TO THE PERSON AGGRIEVED:**

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
#### *(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Dana C. Johnson,**
**Director**

8/19/2020

*(Date Mailed)*

Enclosures(s)

cc:   **Lilian Campos**
      **Labor Relations Coordinator**
      **ALAMEDA HEALTH SYSTEMS**
      **7677 Oakport Street, 12th Floor**
      **Oakland, CA 94621**

**Timothy Travelstead**
**Narayan Travelstead**
**24301 Southland Drive, Suite 607**
**Hayward, CA 94545**



**U.S. Department of Justice**

Civil Rights Division

---

ESD:KDW:KLF
DJ 170-11N-0

*Employment Litigation Section - PHB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*
*www.usdoj.gov/crt/emp*

## NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

**VIA EMAIL**                                    August 18, 2020

Ms. Roslyn E. Head-Lyons
6132 Buena Ventura Avenue
Oakland, CA 94605

        Re:    Roslyn E. Head-Lyons v. Alameda Health Systems
                EEOC Charge No. 846-2017-21246

Dear Ms. Head-Lyons:

It has been determined that the Department of Justice will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC). This should not be taken to mean that the Department of Justice has made a judgment as to whether or not your charge is meritorious.

You are hereby notified that conciliation in this matter was unsuccessful by the EEOC. You are further notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq., against the above-named respondent. If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.

Therefore, you should consult an attorney of your own choosing at your earliest convenience. If you are unable to locate an attorney, you may wish to contact the EEOC, or apply to the appropriate court, since that court may appoint an attorney in appropriate circumstances under Section 706(f)(1) of Title VII, 41 U.S.C. 2000e-5(f)(1).

If you or your attorney have any questions concerning this matter or wish to inspect the investigative file, please feel free to address your inquiry to: Bryan Hoss, Acting Director, EEOC, 1301 Clay Street, Suite 1170-N, Oakland, CA 94612-5217.

                      Sincerely,

                      Eric S. Dreiband
                    Assistant Attorney General
                    Civil Rights Division

        By:    *Karen D. Woodard*

                    Karen D. Woodard
                    Principal Deputy Chief
                    Employment Litigation Section

cc:    County of Alameda, Dept. of Public Health
       EEOC, Oakland Local Office